FILED
2005 Aug-03  PM 03:43
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **JANICE ROBERTS,** | ] | |
| | ] | |
| **Plaintiff,** | ] | |
| | ] | |
| **v.** | ] | **CV-03-BE-2735-S** |
| | ] | |
| **LCI HOLDINGS, INC.,** | ] | |
| | ] | |
| **Defendant.** | ] | |
| | ] | |

**MEMORANDUM OPINION**

**I. INTRODUCTION AND FACTUAL BACKGROUND**

This case is currently pending before the court on a motion for summary judgment (doc. # 19) and supporting brief (doc. # 20) filed by defendant LCI Holdings Inc.  The plaintiff filed a response to the motion for summary judgment (doc. # 26) along with supporting evidentiary submissions (doc. # 27).  The court has jurisdiction of this case under 28 U.S.C. §1331 pursuant to its federal question jurisdiction.

Having reviewed the briefs and evidence submitted by both parties, the court concludes that the defendant's motion for summary judgment is due to be GRANTED in part and DENIED in part.  The court specifically finds that, by failing to respond to the defendant's motion for summary judgment on the Title VII and 42 U.S.C. § 1981 hostile work environment and retaliation claims, the plaintiff has abandoned those claims.[1]  *See Resolution Trust Corp. v.*

---

[1]These claims were based on the plaintiff's contention that she was discriminated against because of disciplinary actions, loss control investigations, and referral to the company's Employee Assistance Program.

1

*Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (holding that "[g]rounds alleged in the complaint but not relied upon in the motion for summary judgment [are] deemed abandoned."); *Bute v. Schuller Int'l, Inc.,* 998 F.Supp. 1473, 1477 (N.D. Ga.1998) (holding that a failure to respond to the opposing party's summary judgment arguments regarding a claim constitutes an abandonment of that claim and warrants the entry of summary judgment for the opposing party). Consequently, the defendant's motion for summary judgment is due to be GRANTED on the plaintiff's hostile work environment and retaliation claims.[2]

However, for the reasons specifically delineated below, the court further finds that the motion for summary judgment is due to be DENIED on the claims under Title VII and 42 U.S.C. § 1981 in which the plaintiff alleges that she was subjected to disparate treatment that eventually culminated in her November 13, 2001 termination.

To the extent they are supported by the record, the facts stated in the light most favorable to the plaintiff are as follows.  Plaintiff Janice Roberts, an African-American female, began working for the defendant on December 9, 2000 as a front-end supervisor at the Liz Claiborne Outlet store in Bessemer, Alabama.

LCI is a subsidiary of Liz Claiborne and operates the outlet store where the plaintiff was employed.  Plaintiff's immediate supervisors were store manager Ann Crawford and Assistant Manager Joan Moore.  Crawford reported directly to regional manager Carol Anderson. Crawford, Moore, and Anderson are Caucasian.

Roberts was an hourly employee along with stockroom supervisor Phillip Brewer and

---

[2]These claims are not specifically delineated in any count of the complaint and instead are referred to in the body of the complaint.  *See* ¶¶ 12, 14-18.

floor supervisor Kim Carmichael.  The plaintiff, Brewer, and Carmichael are all on the same level of managerial authority and reported to Assistant Manager Joan Moore.[3]  Brewer is Caucasian and Carmichael is African-American.

LCI has a four-step progressive disciplinary policy.  The first step consists of an oral warning while steps two and three provide for various types of written warnings.  At the fourth step, the employee is terminated.  The policy provides that at each step of the disciplinary process an Associate Disciplinary Form should be completed.  The Associate Disciplinary Form is a written summary and documentation of each discussion between the associate and the managerial employee at each step of the disciplinary process.

Plaintiff was disciplined several times for speaking to employees in a condescending manner and behaving unprofessionally.  The first of these warnings occurred on December 19, 2000, when Crawford warned plaintiff about speaking to subordinate employees in a condescending manner and behaving unprofessionally during conflicts with other associates.[4] The plaintiff concedes that Crawford was constantly counseling her about the way that she spoke to sales associates.[5]  A copy of the December 19, 2000, written warning was placed in the plaintiff's personnel file.

In the following months,[6] Crawford continued to verbally counsel Roberts about her

---

[3]Pl's Dep., p. 109-111.

[4]The uncontradicted evidence indicates that, during Roberts' initial training period, two supervisory employees complained that plaintiff spoke too loudly, used profanity, and was generally a difficult person to work with.

[5]Pl's Dep., p. 199; Crawford Aff. ¶ 8.

[6]Specifically, February, March, April, May, June, and July of 2001.

inappropriate tone of voice when interacting with associates.  These oral counseling sessions culminated in the issuance of a final written warning on August 23, 2001.[7]  In addition to the previously documented behavioral problems, Crawford's final written warning cited an August 3, 2001, incident where Roberts dealt with floor supervisor Carmichael in a rude and condescending manner and an August 9, 2001, incident where Roberts spoke to an employee in LCI's corporate loss prevention department in a disrespectful manner.  The final written warning also included an "Action Plan for Improvement" advising plaintiff to "take immediate steps to ensure she conducts herself in a respectful and professional manner.  *Failure to comply will result in immediate termination.*"[8] (emphasis added).

At some point,[9] Roberts filed a charge of discrimination with the EEOC that ultimately culminated in an on-site EEOC investigation.  In conjunction with the EEOC's investigation, store manager Crawford prepared an affidavit characterizing the work environment at the store.[10]  Crawford's affidavit indicated that ten to twelve complaints had been lodged against assistant manager Joan Moore, that six to seven complaints had been lodged against stockroom supervisor Phillip Brewer, and that approximately seventeen complaints had been lodged against the plaintiff.

On September 26, 2001, the EEOC conducted a site visit of the defendant's headquarters.  During that visit, EEOC inspectors reviewed the files of thirteen employees and created a

---

[7]*See* doc. # 20, *Ex.* 1.

[8]*Id.*

[9]The parties' submissions do not indicate when this charge was filed.

[10]*See* doc. # 27, *Ex.* B.

4

corresponding summary compilation document listing the name, race, position, and disciplinary actions taken against each employee.[11]  Although Crawford's affidavit indicated that stockroom supervisor Phillip Brewer, a white male, had six to seven complaints in his personnel file for "snapping" at employees, he had no record of disciplinary action in his personnel file at the time of the EEOC's site visit.

Similarly, although Crawford's affidavit indicated that assistant store manager Joan Moore had ten to twelve complaints for speaking to employees in a rude and condescending manner, Moore had no record of disciplinary action in her personnel file at the time of the EEOC's site visit.  However, in a supplemental evidentiary submission, the defendant produced a written disciplinary warning for Assistant Manager Joan Moore that was purportedly contained in the EEOC's investigatory file but not included in the summary compilation formulated during the EEOC's September 26, 2001 site visit.

Crawford's affidavit also indicated that plaintiff had seventeen complaints about the way that she spoke to store employees.  However, her personnel filed only contained four disciplinary warnings at the time of the EEOC's site visit.  Robert's personnel file was the only one that contained written documentation of performance deficiencies at the time of the EEOC's site visit.

 On November 8-9, 2001, plaintiff and Assistant Manager Joan Moore were embroiled in an ongoing dispute about the appropriate procedure for operating the cash registers.[12]  The

---

[11]*Id.*

[12]Specifically, Moore wrote a note to the cashiers explaining that, because of register shortages, managers should ring purchases on only one cash register.  Apparently, Roberts did not agree with Moore's procedures and called Regional Manager Carol Anderson to report her dissatisfaction with the policy.

dispute ultimately culminated with plaintiff calling the Bessemer Police Department on November 9, 2001, to report that Moore was speaking to her in an improper tone of voice, yelling at her in front of other employees, and harassing her.[13]

After the police arrived, assistant manager Joan Moore called Paul Giraldi, the defendant's director of corporate security.  At some point in the conversation, Giraldi suggested that plaintiff should leave the store.  Roberts refused to leave the store and was ultimately terminated on November 12, 2001.[14]

On April 3, 2003, the EEOC determined that the evidence obtained during the September 26, 2001 site visit established "reasonable cause to believe that [the defendant] retaliated against [the plaintiff] for filing a previous charge of discrimination."[15]  Roberts filed suit in this court on October 6, 2003.

## II. STANDARD OF REVIEW AND LEGAL FINDINGS

Summary judgment is an integral part of the Federal Rules of Civil Procedure and allows a trial court to decide cases where no genuine issues of material facts are present.  Fed. R. Civ. P. 56.  Disagreement between the parties is not significant unless the disagreement presents a "genuine issue of material fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). *See also, Celotex v. Catrett*, 477 U.S. 317, 327 (1986).  A factual dispute is genuine where "the evidence is such that a reasonablAugust 1, 2005 jury could return a verdict for the non-moving party."  *Anderson*, 477 U.S. at 251-52.  In opposing a motion for summary judgment, "a party

---

[13]*See* doc. # 21, *Ex*. 1.

[14]*Id.*

[15]*See* doc. # 27, *Ex*. C.

6

may not rely on his pleadings to avoid judgment against him." *Ryan v. Int'l Union of Operating Eng'rs, Local* 675, 794 F.2d 641, 643 (11th Cir.1986).  Furthermore, mere verification of a party's own conclusory allegations is not sufficient to oppose a motion for summary judgment. *Fullman v. Graddick*, 739 F.2d 553 (11th Cir. 1984).

Having reviewed the briefs and evidence submitted by both parties and construing the facts in the light most favorable to the plaintiff, the court concludes that the defendant's motion for summary judgment is due to be GRANTED in part and DENIED in part, for the following reasons.

### III. DISCUSSION

In its motion for summary judgment, the defendant argues that the court should dismiss the plaintiff's disparate treatment claim because of her inability to identify a similarly-situated comparator.  LCI argues that plaintiff "must present evidence that LCI retained white employees who committed the same infraction for which she was discharged - i.e., insubordination . . . and unprofessional conduct toward [the Director of Corporate Security], *after receiving a final written warning*."[16] (emphasis added).  Consequently, the defendant's submission establishes that its reason for discharging Roberts was not based solely on her alleged insubordination to Corporate Security Director Paul Giraldi, but at least partially, on what LCI characterizes as her dismal disciplinary record.[17]

---

[16]*See* doc. # 20, p. 10.

[17]Given this admission, the court concludes that the defendant has not carried its burden of proving a mixed-motive affirmative defense. *See Burrell v. Bd. of Tr. of Georgia Military Coll.*, 125 F.3d 1390, 1395 (11th Cir. 1997) (holding that to prevail on a mixed-motive defense, employer must show that *its legitimate reason, standing alone*, would have induced it to make the same decision) (emphasis added).  *See also, Steger v. General Electric Co.,* 318 F.3d 1066, 1076 (11th Cir. 2001).  The court also notes that the mixed motive affirmative defense, if proven, is not a complete bar to recovery in

Plaintiff's brief in opposition to the motion for summary judgment alleges that her termination was primarily motivated by the racially disparate application of the defendant's disciplinary policy.[18]  The court's understanding of the theory of the plaintiff's case is that the disparate application of the defendant's four-step progressive discipline policy resulted in a proportionally higher number of formal complaints in the plaintiff's personnel file.  According to the plaintiff, this proportionally higher number of formal complaints made Roberts more vulnerable to termination for the alleged incident of insubordination to Corporate Security Director, Paul Giraldi than similarly-situated white comparators.

The court makes two preliminary observations.  First, the EEOC's findings did not explictedly address Roberts' allegations of disparate discipline, the only claim remaining for resolution in this case, given the plaintiff's abandonment of her hostile work environment and retaliation claims.  Second, and perhaps more importantly, the EEOC's "for cause" determination is not binding on this court and does not automatically establish a violation of Title VII or 42 U.S.C. § 1981.  *See Moore v. Devine,* 767 F.2d 1541, 1550-1551 (11th Cir. 1985) (holding that district court is not obliged to address or even refer to EEOC findings in its memorandum opinion).

The court finds that Roberts has presented sufficient evidence, at least for purposes of this motion for summary judgment, that stockroom supervisor Phillip Brewer is a similarly-situated comparator.  Evidence of the differential application of workplace rules or policies raises the requisite inference of discrimination to support a disparate treatment claim.  *See Nix v. WLCY*

---

Title VII discrimination cases, but a limitation on liability. *Brewer v. Dupree*, 356 F. Supp. 2d 1261, 1268 n. 11 (M.D. Ala. 2004) (citing *Harris v. Shelby County Bd. of Educ.*, 99 F.3d 1078, 1084 (11th Cir. 1996).

[18]*See* doc. # 26, p. 4.

*Radio/Rahall Communications,* 738 F.2d 1181, 1186 (11th Cir.1984).

To prove that employees are "similarly situated," the plaintiff must show that the comparator employees are "involved in or accused of the same or similar conduct" yet the relevant workplace rules are applied in a differential, more favorable manner. *Anderson v. WBMG-42*, 253 F.3d 561, 564 (11th Cir. 2001).

In this case, the record indicates that the stockroom supervisor Phillip Brewer had the same level of managerial authority as the plaintiff and that, according to Crawford's affidavit, both had previous complaints for speaking to subordinate employees in an unprofessional manner.[19]  The parties do not dispute that, during the EEOC's September 26, 2001 site visit, Brewer's personnel file did not contain any record of disciplinary action despite the prior complaints, while the plaintiff's personnel file contained four references to prior disciplinary infractions.

The above-referenced disparity is particularly troubling given the LCI's progressive disciplinary policy.  In an attempt to explain the discrepancy between the number of complaints and the record of disciplinary activity contained in various personnel files, district manager Carol Anderson testified that supervisors are encouraged to handle less severe disciplinary matters in an informal manner that includes verbal coaching techniques prior to utilizing more formal methods of discipline contained in the four-step progressive disciplinary policy.[20]

However, a jury could reasonably infer that the progressive disciplinary policy does not explicitely provide for such a deviation.  According to the policy:

> By following this process *everyone is clear about policy/procedures and performance expectations*.  It lets the associate know that a particular transgression

---

[19]Pl's Dep., p. 109-111.

[20]*See* doc. # 21, Ex. 5.

9

> or downturn in job performance had not gone unnoticed. *You will help the*
> *associate resolve any problems that are standing in the way of good performance* or
> behavior.

(emphasis added). Furthermore, under the section of the policy entitled "Fundamentals of

Effective Discipline" managerial employees are instructed to complete an Associate Disciplinary

form so that they have a written summary and documentation of each discussion at each step of the

disciplinary process.[21] Given the above-quoted provisions, a jury could reasonably reject

Anderson's testimony about the legitimacy of an informal coaching process that would, to some

degree, override the company's written disciplinary policy, thus, permitting discrepancies between

the manner in which complaints were documented and incorporated into an associates' personnel

file.

Based on the undisputed evidence that Brewer and Roberts received differential treatment

in the manner in which their performance deficiencies were documented and incorporated into their

personnel files, the court concludes that Brewer and the plaintiff are similarly situated for purposes

of establishing a prima facie case of disparate treatment.

The court also concludes that Roberts has presented sufficient evidence of pretext to

survive a motion for summary judgment. A plaintiff can demonstrate pretext by pointing to "such

weaknesses, implausibilities, inconsistencies, incoherences, or contradictions in the employer's

proffered legitimate reasons . . . that a reasonable factfinder could find them unworthy of

credence." *Hamilton v. Montgomery County Bd. of Educ.*, 122 F. Supp. 1273, 1281 (M.D. Ala.

2000) (citing *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997)).

The plaintiff may utilize comparator evidence of the differential application of the work-

---

[21]*See* doc. # 221, Ex. 5.

place rules to establish pretext.  *See Walker v. Mortham*, 158 F.3d 1177, 1184 n. 10 (11th Cir. 1998); *Miles v. M.N.C. Corp.*, 750 F.2d 867 (11th Cir. 1985).  In this case, the inconsistency between the actual process of documenting complaints about employee performance and the express provisions of the written policy casts doubt on the defendant's purportedly race-neutral explanation for the plaintiff's discharge.  Specifically, a jury could reasonable conclude that the defendant's explanation of its ostensibly inconsistent methodology of documenting employee discipline is pretextual, and thus, could reject LCI's contention that Roberts' termination was partially motivated by her disciplinary record.

Based on the foregoing, the court concludes that the motion for summary judgment is due to be DENIED on the plaintiff's disparate treatment claim and GRANTED on the retaliation and racially hostile work environment claims.

The court will enter a separate order consistent with this Memorandum Opinion.

DONE and ORDERED this 3rd day of August, 2005.

_Karon O. Bowdre_

_____
KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE